CITY AND COUNTY OF SAN FRANCISCO *v.* MACKEY.

*(Circuit Court, D. California.* November 17, 1884.)

1. TAXATION—DOUBLE TAXATION—CONSTITUTION OF CALIFORNIA.
   Double taxation is prohibited by the constitution of California.
2. SAME—TAXING PROPERTY OF CORPORATION AND STOCK.
   To tax the property of a corporation to the corporation, and also to tax the stock representing the property to the stockholders, would amount to double taxation.
3. SAME—DOMESTIC CORPORATION—PROPERTY TAXABLE IN ANOTHER STATE.
   The Constitution and Political Code of California exclude from taxation in California, through the medium of its stock, the tangible property of a California corporation situate and taxed in the state of Nevada.
4. SAME—SITUS OF MONEY AND CREDITS.
   The *situs* of money and other solvent credits, for purposes of taxation, is the residence of the owner or creditor, in the absence of statute.
5. SAME—SOLVENT CREDITS OF NON-RESIDENT.
   The money and other solvent credits due from citizens of California to a citizen of another state, and not secured by mortgage or deed of trust, are not liable to taxation in California.

At Law.

*McClure & Dwinelle,* for plaintiff.

*B. C. Whitman,* for defendant.

SAWYER, J. This is a demurrer to the amended complaint in an action to recover city and county and state taxes for the fiscal year, 1880–81, assessed upon the capital stock of a large number of corporations and upon solvent credits. A demurrer to the original complaint was sustained on the ground that the assessment is void as being double taxation, and a violation of the state constitution. See opinion of the court, 21 FED. REP. 539. Leave to amend having been given, an amended complaint has been filed, and therein it is sought, by certain allegations, to obviate the objections to the original complaint, and to take the case out of the principle of the former decision. These new allegations are that the tax is assessed "on said shares of stock of companies severally incorporated under the law of, and having their principal offices in the state of, California; that the aforesaid shares of stock is and are, and each of them are, shares of stock of corporations whose entire tangible property was situated in the state of Nevada, and that the entire property of said corporation was not assessed for said fiscal year, 1880–1881." The allegation, "whose entire tangible property was situated in the state

of Nevada," at least as to several of the corporations named, is notoriously and manifestly not true in fact; as, for example, as to the Nevada Bank, the San Francisco Gas Company, and other companies located at San Francisco. But assume the allegation to be true, for the purposes of the demurrer, the question arises, do the averments quoted, in connection with the other allegations of the complaint, show a good cause of action? In my judgment they do not.

Article 13, § 1, provides that "all property *in the state* * * * shall be taxed," etc. It does not authorize the taxation of property *not in the state.* And section 10 of the same article provides that "all property * * * shall be assessed in the county, city, and county, town, township, or district *in which it is situated.*" And the statute follows the constitution in this respect. Pol. Code, § 3628. They do not authorize an assessment, except at the *situs* of the property. And section 3627 of the Political Code, as it stood in 1880, (St. 1880, p. 6,) when this assessment was made, recognizing this principle of the constitution and laws, and the inadmissibility of double taxation, provided, with reference to the stock of corporations having their principal place of business in this state, that "the proportionate value of the capital stock of corporations * * * having their principal place of business in this state, for the purposes of assessment and taxation, shall be its market value, deducting therefrom the value of all property assessed to them in this state *or elsewhere* of which such capital stock is the representative." Thus the constitution does not authorize the taxation, in California, through the medium of its stock, of the tangible property of a California corporation situate and taxed in the state of Nevada; but, by stating what property should be taxed, and limiting it to property within this state, and limiting the assessment to the particular district in which the property is situated, by plain and necessary implications, excludes it from taxation. So, also, the provision of the Political Code cited, in express terms, excludes taxation, through the medium of the capital stock of the corporation, of all the property of the corporation of which the capital stock of the corporation is the representative assessed, either in this state "*or elsewhere.*"

Now, all the tangible property of all these corporations, according to the allegations of the complaint, which, for the purposes of the demurrer, are taken to be true, is situate in the state of Nevada, and beyond the jurisdiction of California, and, presumably, nothing to the contrary being shown, was taxed under the laws of Nevada to raise revenue for the purposes of the state and local governments of that commonwealth. The laws of Nevada, of which this court takes notice, require all property in that state to be taxed. It is true that to the allegation, "whose entire tangible property was situated in the state of Nevada," is added, "and the entire property of said corporations was not assessed for said fiscal year, 1880–1881." But this is only an allegation that it was not assessed in California

for "said fiscal year." The state of Nevada had no relation to said fiscal year 1880–81, for which the assessment sued for was made, and the allegation is limited to the particular assessment for the particular fiscal year upon which the suit is brought. No other is even alluded to in the complaint. This allegation as to the property not assessed must also be construed with reference to the other allegations of the complaint, and as referring only to the tangible property of the corporation alleged to be situate in the state of Nevada. It is not, therefore, an allegation that the property was not assessed "*elsewhere,*" or that any other property of the corporation was not assessed; and, doubtless, no such allegation could be truthfully made. It must be presumed that the allegation was made as favorable to the complainant as the facts would justify. Such is always the legal presumption in respect to the allegations of pleadings. It is clearly insufficient, in this particular, to take the case out of the rule heretofore adopted in this case, and as established in *Burke* v. *Badlam*, 57 Cal. 594, as to all property situated in this state; and that situate and taxed "elsewhere" is not taxable at all; and also insufficient to bring it within the terms of the constitution, and the statute authorizing the assessment of the tax. The property, as such, alleged to be not taxed, is without the jurisdiction of the state, and cannot be lawfully taxed as tangible property at all in the state of California. It cannot be reached as tangible property, and it is sought to reach it through a taxation of the shares of stock representing it of the corporation organized and existing within the jurisdiction of California. But this interest, as a share of the capital stock, is incorporeal and intangible, and it has no *situs* apart from the person of the owner. The defendant appears by the record, and that fact is now incontrovertible, to be a citizen of the state of Nevada. It is on that ground alone that this court has jurisdiction of this case. In the absence of any averment to the contrary, he is presumably a resident of the state of which he is a citizen. There is no averment to the contrary, and we all know, as a matter of fact, that an averment could not be truthfully made that defendant was a resident of California during the fiscal year 1880–81. We all know, as an historical and publicly notorious fact, that defendant was not a resident of California during that fiscal year. It is as publicly notorious and well known a fact in California and Nevada as that President Arthur was not a resident of California during that year.

The interest of defendant in the capital stock of the corporation being incorporeal and intangible, and having no *situs* apart from the person of the owner, and he being a non-resident, without the jurisdiction of the state, and the tangible property of the corporation, of which the capital stock is the representative, being also situate outside of the state, it was not, without some express constitutional or statutory provision making it so, if any such valid provision there could be, subject to the jurisdiction of the state, or to taxation within

the state, through the medium of the shares of stock in the corporation; and we have seen that the provisions of the constitution and statute do not reach the case, as alleged in the complaint, there being no such express, unqualified provision. This view is fully sustained by the *State Tax on Foreign Bonds Case*, 15 Wall. 300, and the cases therein cited. The case of *San Francisco* v. *Fry*, 11 Pac. C. Law J. 393, cited and relied on by complainant, was for taxes against a citizen and resident of California, over whom the state had jurisdiction, assessed for the year 1876–77, before the amendments of 1880, under which the present tax was assessed. And such, also, was the case in *San Francisco* v. *Flood*, 2 Pac. Rep. 264, also cited. In *San Francisco* v. *Fry*, as in the cases therein cited as authority, the court rests its decision, sustaining the tax assessed upon the stock of the corporation whose tangible property was in the state of Nevada, upon the fact that the owner of the shares was a citizen of California, and that the *situs* of this intangible property followed that of the owner, and was therefore, in contemplation of law, situate within the jurisdiction of, and taxable in, the state of California. The court quotes from the Massachusetts case cited this passage:

"Thus shares in *foreign* railroad corporations held by *citizens of this state* are fully taxed here, and no deduction is made for any taxation to which the corporations are subject in the states where they are situated. So it is in regard to shares held by our citizens in banks, insurance companies, and other moneyed corporations *situated in other states*. Such shares, *when held by our citizens, are here treated as so much personal estate, following the person of the owner, and taxable at their full value in this commonwealth*, regardless of what may be the foreign law as to taxation of the capital, or of any part of it, elsewhere. See *State Tax on Foreign-held Bonds*, 15 Wall. 323, 324; 18 Amer. Law Reg. 1879, (N. S.) 1, and cases there cited." 11 Pac. C. Law J. 395.

The court then adds: "The above-quoted remarks are true of the system of taxation established in this state," (Id.,) thus distinctly recognizing the principle that the *situs* of incorporeal, intangible shares of stock, like that of a debt due, for the purposes of taxation, follows the person of the owner, and is the residence of the owner; and putting the decision on that ground.

The court, it will be seen, also cites *State Railroad Tax on Foreign-held Bonds*, 15 Wall. 323, 324, as sustaining the same position, thereby recognizing it as an authority directly on this point. The statute itself, manifestly, recognizes and is framed upon the same principle, including the very sections cited by complainant as being entirely consistent with the provisions of section 3627 of the Political Code as amended in 1880, cited and relied on by defendant. Section 3629, Pol. Code, (Amend. 1880,) p. 7, provides that the assessor "must exact from each person a statement  *  *  *  of all real and personal property owned by such person, or in his possession, or under his control,  *  *  *  showing, separately, among other things, in subdivision 5, "the certificates of shares of the capital stock of any cor-

poration, association, or joint-stock company *not having its principal place of business in the state*." And section 3640, Id. p. 9, provides that "each person, firm, or corporation, owning or having in his or its possession any of the shares of the capital stock of any corporation, association, or joint-stock company, shall be assessed therefor." And "the owner or holder of capital stock in corporations, associations, and joint-stock companies, whose principal place of business *is not within the state*, must be *individually* assessed for such stock. Shareholders, in the statement required by section 3629 of this Code, "shall specify the number of shares of stock held by them, and the name of the corporation." Now the persons mentioned and intended in sections 3629 and 3640, and the owners and holders of shares of stock in foreign corporations who are to be "*individually* assessed on such stock" under the latter sections, are evidently residents of the state and taxing districts, *and no others*. The constitution does not contemplate any others than residents of the state. The provision is: "The legislature shall, by law, require *each tax-payer in this state* to make and deliver to the county assessor, annually, a statement," etc. Art. 13, § 8. To no others than residents could they apply. No others could be required by the assessor to make the statement, or be called upon for that purpose. Non-resident owners of stock in domestic corporations could not be thus called upon, as they are out of the jurisdiction of the state, and of the assessor of the taxing district. This provision of the Code itself, then, as well as the supreme court, and the constitutional provision cited, clearly recognizes the principle that the incorporeal, intangible right of property in shares of stock in a corporation follows the owner, and is taxable at the place of his residence, and, on that principle, requires that resident owners of stock in foreign corporations be taxed thereon where they reside; and it is only upon this principle that it can be so taxed. If the state insists upon this principle with reference to resident owners of stock in foreign corporations, comity, at least, demands that it should also recognize it with respect to foreign residents owning stock in domestic corporations. It certainly should not take the advantages both ways. And there is nothing in any provision of the constitution or statute of California, brought to my notice, that indicates any intention to apply a different principle as to the *situs* of incorporeal, intangible personal property held by non-residents of the state from that applicable to residents. The statutes are entirely consistent, and can have full force and operation upon the theory adopted as to residents, that the *situs* of incorporeal, intangible personal property, for purposes of taxation, is that of the residence of the owner, when living outside of the state as well as when living within it; while the other view would involve inconsistency in the principle adopted.

Under the other view, there would be one law to govern the rights of residents and another those of non-residents. The constitution

authorizes the taxation of property within the state, and the statute says it must be taxed in the "county, city and county, town, township, or district in which it is situate." If it be competent for the legislature to declare that the *situs* of incorporeal and intangible personal property shall be other than that of the residence of the non-resident owner, for the purposes of taxation, it has not done so, either in terms or by any provision from which it can reasonably be implied. There is no definition, so far as I am aware, in the constitution or statutes of California, declaring what shall constitute the *situs* of such property for the purposes of taxation or otherwise; and, in the absence of such definition, we must be governed by the general and well-established rules of law on the subject, and that is, that it follows the person of the owner. Upon the principle that the *situs* of this kind of property follows the owner, for the purposes of taxation, recognized and adopted by the supreme court in *San Francisco* v. *Fry*, and in the cases therein referred to; also by the constitution and by the legislature in the provisions of the Political Code cited,—the defendant was taxable upon the full value of all this identical stock in the state of Nevada. If this generally recognized principle subjected him to taxation in Nevada for the full value of the stock where he resided, the same principle certainly ought to have exempted him from a similar taxation here, as both the person and property, on the theory recognized, were out of the jurisdiction of the state.

The obvious tendency of discrimination,—double, unequal, and unjust taxation,—is to drive our citizens having a large amount of personal property out of the state to escape that kind of oppression. If, notwithstanding their departure, they can still be taxed upon their incorporeal and intangible property through their stock in domestic corporations, and thereby be taxed on the same property in both states, the next step will be for business men either to withdraw their investments from the state, or change them from *domestic* into *foreign* corporations, as has sometimes been done, and the business will hereafter, to a large extent, be carried on by non-residents in their individual characters, or by foreign corporations over which the state has little control, and the state will be confined for its revenue to the tangible property of such non-residents and foreign corporations found within its borders. A policy that recognizes the principle stated, for the purpose of taxing the stock of resident citizens in foreign corporations, as following the person, but repudiates it for the purpose of taxing the stock of citizens and residents of other states in domestic corporations, thereby imposing upon them the burdens of taxation upon the same property in both states, cannot fail to be inimical to the best interests of the state, and to discourage investments by both resident and non-resident capitalists, thereby greatly retarding the future development of its resources. It also places foreign on a better footing than domestic corporations, in violation of the constitution. The principle should be altogether repu-

diated, or made applicable both ways. I cannot impute to the legislature an intent to adopt a policy so suicidal as that claimed by the complainant, without provisions of the constitution and statutes, indicating such a purpose, far more specific and unmistakable in their import than any yet brought to my attention.

There are two items of property assessed as "solvent credits—money, valued at two hundred and fifty thousand dollars; solvent credits, valued at two hundred and fifty thousand dollars." What is meant by the terms "solvent credits—money," is not entirely clear. I suppose it means money credits, or credits for moneys, as contradistinguished from credits for goods, wares, merchandise, labor, etc. I do not find the terms in that form in any provision of the constitution or statutes brought to my notice. As both the constitution and statutes make a distinction between credits secured by a mortgage and "solvent credits" not so secured, it may be that moneys loaned and due, secured by mortgage, are called "solvent credits—money;" or the terms are more likely used to designate moneys deposited in solvent banks, subject to be drawn out as wanted on checks of the depositor in the ordinary course of business. I do not perceive that it can make any difference which it is; for in the former case it is not taxable at all, as such, but the mortgage must be assessed "as an interest in the land affected thereby," and it must be "assessed and taxed to the owner thereof *in the county, city, or district in which the property affected thereby is situate.*" Const. art. 13, § 4. And the Code follows the constitution. Pol. Code, § 3627. But if taxable as "money credits," then in either class of credits, independently of statutory definition to the contrary, it can only be regarded as a solvent credit. No particular number of coins can be set aside as belonging to any particular depositor. The general depositary has a right to mingle the money with other moneys; use the surplus moneys deposited as his own, and at his own discretion. The deposit is not special. It is simply an open money account. The depositor is only entitled to so much money in amount, and to no particular money, which may or may not be paid when his check is presented, according to the ability and will of the bank with which it is deposited. The depositor is, in law, only a creditor to the amount of the balance held by and due from the bank or banker on an open account. He could not replevy or recover possession of any particular money. The only way to enforce payment would be to bring a suit for any balance due, as in case of money due on any other open account, as for goods sold and delivered. It is but a chose in action. Under the authorities cited, clearly, independent of statutory provisions to the contrary, such credits have no *situs* for taxation against the creditor apart from the person of the depositor. See 15 Wall. *supra; People* v. *Eastman,* 25 Cal. 603; *People* v. *Whartenby,* 38 Cal. 466, 467. The assessment in question seems to be an effort to reach for taxation tangible property in another state through the stock in a domestic corporation

owning it, held by a citizen and resident of the state where such tangible property is situated.    I do not find any authority in the constitution or laws for accomplishing this purpose.    This view renders it unnecessary to consider the other grounds of demurrer to the complaint.    The objection is radical, and complainant has been permitted to amend once after demurrer sustained.    The demurrer must be sustained, and final judgment for defendant be rendered on the demurrer; and it is so ordered.

---

The constitution of California prohibits double taxation; but even without a constitutional inhibition, it is sufficient if the legislature has prohibited it.[1] As a general rule, taxation of the stock of a corporation may protect its property in which such capital is invested, and the taxation of the property may protect its capital stock.    It is only the shares of stock of foreign corporations which may be taxed in full to resident holders, irrespective of the taxation of the property where located; and although the whole stock and profit are subject to taxation in the state of their residence.[2]    The shares of stock of a corporation are personal property, and follow the rule that personal property follows the owner, and is taxable at the place of his domicile.[3]    Debts due are credits within the meaning of the revenue law, and are to be assessed as property.[4]    They are property independent of the fact that they may be secured by mortgage even upon land, and although the land is also taxed;[5] and the *situs* of taxation is at the domicile of the creditor.[6]    The debtor is protected from double taxation by the provisions of the statute, which enable him to deduct his debts from the valuation of his property mortgaged therefor.[7]—[ED.

[1] Burke v. Badlam, 57 Cal. 603.
[2] See Desty, Tax'n, 200, where the question is discussed and cases cited.
[3] Id. 62, 322.
[4] Id. 328; so held in Jones v. Seward Co. 10 Neb. 154, S. C. 4 N. W. Rep. 946, and in the supreme court of the United States in