## JOHN H. GEIS

### vs.

## THE STATE OF MARYLAND.

*Taxation*: *wagon licenses; Baltimore City; for wagons "commonly used" in the city; liability construed.*

"Commonly used" in the city, as employed in section 29 of Article 8 of the Baltimore City Code of 1893, taxing all wagons and other vehicles, means a *common,* as distinguished from a *casual,* use.                                                    p. 268

While every farm wagon which happens to visit the city as many as twenty times a year might not be said to be *commonly used* within the municipal area, yet when an individual owns a great many farm wagons and lumber wagons, some of which visit the city nearly every day, such alternate use does not exempt them each and all from the necessity of being provided with a license, as would be necessary if the business of the owner were committed to them exclusively.                               p. 269

*Decided May 5th, 1915.*

Appeal from the Criminal Court of Baltimore City. (EL-LIOTT, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Raymond S. Williams* and *Enoch Harlan,* for the appellant.

*Edgar Allan Poe, the Attorney-General,* and *Horton S. Smith, Assistant State's Attorney* (with whom were *Wm. F. Broening, State's Attorney,* and *Lindsay C. Spencer, Assistant State's Attorney,* on the brief), for the appellee.

URNER, J., delivered the opinion of the Court.

An ordinance of the Mayor and City Council of Baltimore, being section 29 of Article 8 of the City Code of 1893, provides that: "All hackney coaches, buggies, cabs and gigs, kept for hire, and all wagons, furniture carriages, carts, drays, package carts, boats (other than open row boats, of every description) and scows, owned or commonly used or employed in the city, shall be numbered with plain, conspicuous figures, on plates of tin, to be provided as hereinafter directed, * * * and the owner or owners of such carriages, boats or scows, shall annually appear at the office of the Comptroller and have entered in a book kept for that purpose, his or her name, place of abode, and the description of every such carriage, boat or scow by him or her owned, and the number thereon to be affixed, and such owner or owners shall take out a license containing his, her or their number signed by the City Comptroller with the City Seal thereto affixed, and no owner shall be permitted to use or employ or let for hire on any street, lane or alley, nor in any water within the city any" vehicle, boat or scow as previously mentioned, "until he, she or they shall first comply with" the ordinance; and for a violation of its provisions a fine of five dollars is prescribed. By section 59 of the City Charter of 1898 the Collector of Water Rents and Licenses is charged with the duty of collecting all license fees imposed by ordinance, and in the City Code of 1906 (Article 41, section 76,), the Collector is substituted for the Comptroller as the officer having authority to execute the provisions we have quoted.

The appellant was indicted and convicted upon the charge that he commonly used and employed in the City of Baltimore a certian wagon, of which he was the owner, without

having obtained a license as required by the ordinance. The case was tried before the Court below upon an agreed statement of facts, with a stipulation for a judgment thereon, according to the conclusion reached, and for a right of appeal to this Court, in conformity with the practice sustained as proper in *Keller* v. *State,* 12 Md. 322; *Bramble* v. *State,* 88 Md. 687, and other cases. It appears from the agreement as to the facts that the appellant is a resident of Anne Arundel County, where he owns two farms and a lumber yard. One of the farms is six miles and the other three miles distant from the City of Baltimore. The lumber yard is located in Brooklyn, about a mile from Baltimore by way of the Light Street Bridge. For the operation of his farms and his lumber industry the appellant owns and uses twenty-five wagons and carts of various kinds and twenty-six mules and horses. One or more of the teams visit Baltimore every two or three days for the purpose of hauling manure from the city to the farms, or bringing out lumber for delivery in the county, or taking produce from the farms to one of the city markets. With one or two exceptions, all of the teams are thus employed, but not with equal frequency. They are all used in both the farm and lumber delivery work in the county. Upon an average estimate each of the wagons goes to Baltimore about twenty times a year, and no team makes more than fifty trips to the city within such a period. The wagon to which the indictment refers was within the corporate limits of Baltimore when its driver was arrested, and it had been sent to the city for building material to be used in the appellant's business. No license had been procured by the appellant for the use of any of his vehicles on the city streets. The fee to be paid for such license, as fixed by the ordinance, is two dollars for every "wagon, cart or other carriage of burden, drawn by one horse or mule," and the same amount for each additional animal so used.

The defense sought to be maintained, upon the facts stated, is that the wagon mentioned in the indictment was not "commonly used or employed in the city," within the

meaning of the ordinance, and that its owner, therefore, was not subject to the license regulations. In support of this theory the appellant refers to the fact that no wagon owned by him visited the city more than fifty times a year, and that the one in question is not shown to have exceeded the admitted average of twenty trips annually. It is urged that such a use of the wagon in the city was merely occasional and was not sufficiently frequent to come within the purview of the ordinance alleged to have been violated.

There can be no doubt, upon the record, that the aggregate extent to which the appellant is using the streets of Baltimore, with his twenty-five teams, making a yearly total of five hundred visits, is to be regarded as a common use of the municipal thoroughfares. But as the ordinance deals with each vehicle separately and requires it to be licensed only when it is owned or *commonly used* in the city, the question for decision is said to be simply whether it is proper to so characterize a use of the streets which is limited to twenty visits a year by a wagon employed for the purposes and under the circumstances described.

The intent of the provision under consideration is that every means of transportation owned in the city and included within any of the designated classes, shall be licensed, but in the case of similar conveyances owned elsewhere it was plainly designed that something more than a mere occasional use within the corporate limits should occur before compliance with the ordinance could be exacted. The term "commonly," as used in this connection, obviously suggests a *common* as distinguished from a *casual* use. It is defined as being synonymous with "ordinarily, generally, usually, for the most part"; *Webster's New International, Century,* and *Standard Dictionaries.* As the term is thus understood we should not be disposed to hold that every farm or lumber wagon which visits the city as many as twenty times a year is being *commonly* used within the municipal area. But in the present case we are concerned with unusual conditions. The wagon here in question is one of a large number used

indiscriminately by their owner for agricultural and lumber yard purposes. It may be assumed that the necessity for maintaining twenty-five teams is mainly attributable to the lumber business, as the two farms would probably not require a large proportion of that number. If only several of the teams were to be used for hauling materials to and from the city, they would doubtless be principally occupied with that work. In such event, the terms of the ordinance would be clearly applicable to the vehicles so employed. It does not seem reasonable that the alternative use of many carts and wagons, under the conditions shown by the record, should exempt all of them from a license liability to which some at least would be subject if the city hauling incident to the owner's business were committed to a few of them exclusively.

While the specific question in this case is whether the wagon mentioned in the indictment was being commonly used in the City of Baltimore, we think it is proper, in determining that issue, to consider the essential relation which the use of the particular wagon in dispute bears to the common system of similar operations conducted by the same owner within the limits of the municipality. There does not appear to have been any effort to enforce the ordinance as against any other of the appellant's vehicles, but the evident purpose in the present case is to test his right to be wholly exempted from the prescribed regulation and license with respect to his uses of the city streets in the manner and to the extent we have indicated. As the wagon involved in this prosecution is one of the units of a general hauling equipment which is used regularly and frequently in Baltimore, the charge that it is commonly employed within the city has, in our opinion, been sustained. The appellant may readily limit the amount of his licenses fees by reducing the number of the wagons assigned to the work of hauling to and from the city, but he is not entitled to be relieved entirely of such liability merely because he may prefer to use all instead of only a few of his numerous teams for that purpose.

*Judgment affirmed, with costs.*