[S. F. No. 15996. In Bank.—July 2, 1941.]

FRANK X. FLYNN, Respondent, v. CITY AND COUNTY OF SAN FRANCISCO (a Municipal Corporation), Appellant.

John J. O'Toole, City Attorney, and Walter A. Dold, Deputy City Attorney, for Appellant.

Henry C. Clausen for Respondent.

CURTIS, J.—Plaintiff, upon two hundred fifty-five assigned causes of action, brought this suit against the city and county of San Francisco to recover various sums paid as

and for license taxes during the years 1931 to 1935, inclusive. The judgment was for the plaintiff, and the defendant city and county has appealed.

For the sake of brevity on the trial of this action it was stipulated and the court found that plaintiff's assignors could properly be segregated into three groups, classified according to ownership of the following vehicles: "miscellaneous trucks," "trucks for hire," and "taxicabs". License taxes were collected from these persons under authority of ordinance No. 5132, New Series, adopted in 1920 and entitled "An Ordinance Imposing License Taxes on Certain Businesses, Callings, Trades or Employments within the City and County of San Francisco". We are concerned here with the license provision relating to trucks, section 73, as amended in 1920 and 1925 by the respective ordinances No. 5191 and No. 6584, New Series, and the license provision relating to taxicabs, section 54, as amended in 1925 by ordinance No. 6586, New Series, whereby the levies in question were based on the number and type of vehicles owned. In the trial court plaintiff urged that these ordinance sections were invalid for the following reasons: (1) the license taxes were imposed for revenue rather than for regulation only, a levy alleged to be beyond the power of the city and county to authorize under its present charter; and (2) the collection of these amounts constituted double taxation, oppressive and unfair, for at all times in addition to the stated license taxes, the city and county of San Francisco exacted an *ad valorem* property tax on the same vehicles. Plaintiff also claimed that the payments here in question were made under compulsion. The lower court upheld these contentions and declared the taxes were paid involuntarily, but because of the bar of subdivision 1 of section 339 of the Code of Civil Procedure, recovery by plaintiff was limited to $29,782.20, representing the sums so collected from plaintiff's assignors within two years of filing suit.

The chief controversial issue to be determined on this appeal is that of the validity of these ordinance provisions challenged on two grounds: (1) their alleged illegal imposition of a license tax for purposes of revenue as distinguished from regulation; and (2) their asserted authorization of double taxation in contravention of the state Constitution.

■ With respect to the first proposition, we refer to our recent decision in *West Coast Advertising Co.* v. *City and County of San Francisco* (1939), 14 Cal. (2d) 516 [95 Pac. (2d) 138], wherein, after a complete review of the pertinent authorities in this state, we determined the matter in favor of the municipality in concluding that San Francisco has the power under its freeholders' charter to levy license taxes for revenue purposes on any and every kind of business except that conducted by a seller or manufacturer of goods, wares or merchandise who operates at a fixed place of business in said city and county and who is not required to procure a permit ''in accordance with or under authority of any local health, sanitary or other ordinance under the police power.'' (Section 24 of the San Francisco Charter, Stats. 1931, pp. 2973, 2991, 2992.) Therefore, no further comment on that subject is necessary other than the statement that we adhere to the views there expressed. The question of whether or not any of respondent's assignors come within the protection of the foregoing exemption as expressed in section 24 of the charter need not be considered here, since it is our opinion that the constitutional inhibition against double taxation of property is decisive of the issue of validity of these ordinance provisions in their application to all three groups of taxpayers above mentioned. It is therefore to this second objection raised by respondent that we now turn our attention.

■ In support of his contention that these sections of the San Francisco License Ordinance impose double taxation, respondent urges that since these assessments are based on ownership of certain designated vehicles, they are for the same purpose and determined in the same manner as the regular *ad valorem* taxes levied by the appellant on all property owners. Appellant resists this argument by claiming that these exactions are, in fact, occupational license taxes for the privilege of engaging in a business wherein the specified vehicles may be used on the public streets in the course of regular commercial activities.

The pertinent language of the provisions of ordinance No. 5132, New Series, amended as aforesaid, bearing on this particular question, is as follows:

''Section 73. Every person, firm or corporation owning any truck, box wagon, tank wagon, hay wagon, lumber truck, motorcycle or other vehicles, whether drawn by horses, pro-

pelled by motors or used as a trailer, shall pay a license fee therefor as follows:''

Briefly stated, the schedule of amounts to be paid is fixed according to the size and type of the listed vehicles, with the exception of motorcycles, which are subject to the prescribed fee if used commercially and which are not involved in this case.

''Section 54. Every person, firm or corporation owning any public passenger vehicle, whether drawn by horses or propelled by any motive power, except railroad cars, shall pay a license tax therefor, as follows:''

The assessments vary according to the seating capacity available in the specified vehicles.

Examination of the express wording of these sections reveals that the levies depend entirely on the factor of ownership; no mention is made of use or operation of the vehicles, with the exception above mentioned as to motorcycles. In the face of this clear language referable to ownership as the single determinant of these assessments, we do not consider these sections susceptible of the construction advanced by appellant. The decisions relied upon by appellant such as *Geis* v. *State*, 126 Md. 265 [94 Atl. 909], *Harder's Fire Proof Storage & Van Co.* v. *City of Chicago*, 235 Ill. 58 [85 N. E. 245, 14 Ann. Cas. 536], *City of Chicago* v. *American Tile & Gravel Roof Co.*, 282 Ill. 537 [118 N. E. 730], and *City of Buffalo* v. *Goodman*, 77 Misc. 355 [136 N. Y. Supp. 568], were concerned with enactments designed to impose license fees on vehicles used or operated on the streets in connection with business activities. For instance, in the case of *Harder's Fire Proof Storage & Van Co.* v. *City of Chicago, supra,* the ordinance under review provided that it was unlawful for any person ''to use . . . any wagon or other vehicle in the transportation of persons or property upon the streets, avenues, or alleys of the city unless such wagon or vehicle be licensed,'' and accordingly it was held valid as a proper regulation of the use of the streets.

■ The character of a tax must be determined by its incidents, and from the natural and legal effect of the language employed in the act. (*Dawson* v. *Kentucky Distilleries & Warehouse Co.*, 255 U. S. 288, 292 [41 S. Ct. 272, 65 L. Ed. 638]; *Ingels* v. *Riley*, 5 Cal. (2d) 154, 159 [53 Pac. (2d) 939, 103 A. L. R. 1].) The nomenclature is of minor importance,

for the court will look beyond the mere title or the bare legislative assertion that the provision is for a license to see and determine the real object, purpose and result of the enactment. (37 C. J. 172; *Smith* v. *Mahoney*, 22 Ariz. 342, 348 [197 Pac. 704].) ■ A tax levied by reason of ownership of property is a tax on property rather than an occupation tax (4 Cooley on Taxation, 4th ed., sec. 1676, p. 3382 ; *Dawson* v. *Kentucky Distilleries & Warehouse Co., supra,* at p. 294; *Thompson* v. *Kreutzer,* 112 Miss. 165, 167 [72 So. 891, Ann. Cas. 1918A, 674]), and it reasonably follows that the mere right to own and hold property cannot be made the subject of excises. (*Craig* v. *Taylor,* 192 Ky. 36, 39 [232 S. W. 395].) ■ Here we unquestionably have a situation where the same persons paid taxes on their vehicles twice, to the same taxing power, during the same period, based each time upon ownership of the same property, and each time for the same purpose, namely, revenue. Under such circumstances these so-called license taxes clearly fall within the terms of section 3607 of the Political Code, which provides that double taxation of property shall not be permitted.

■ Though the state Constitution does not forbid double taxation expressly, it does provide by article XIII, sec. 1, that ''all property in the State . . . shall be taxed in proportion to its value,'' which language has been construed to prohibit double taxation of property. (*Bank of California Nat. Assn.* v. *Richardson,* 175 Cal. 813 [165 Pac. 152] ; *Bank of California Nat. Assn.* v. *Roberts,* 173 Cal. 398 [160 Pac. 225] ; *People ex rel. Burke* v. *Badlam,* 57 Cal. 594; *Spring Valley Water Co.* v. *County of Alameda,* 24 Cal. App. 278 [141 Pac. 38] ; *City and County of San Francisco* v. *Mackey,* 21 Fed. 539, affd. 22 Fed. 602 [10 Sawy. 431] (C. C. Cal. 1884)].) As was stated in the early case of *People* v. *Parks,* 58 Cal. 624, ''Duplicate or triplicate taxation levied at the same time, and for the same purpose and upon the same property . . . is void, whether levied according to the standard of valuation or benefits.'' ■ In harmony with this line of decision, we do not see how a tax on a person's vehicles based distinctively on ownership can be supported, when by the same authority and for the same purpose the same vehicles were taxed by value as a part of his whole property. This is a very different thing from one tax upon property and another upon the business, though the latter may indi-

rectly reach the property. Manifestly, under the prevailing circumstances, the exaction of the assessments in question was violative of the indispensable principle of equality and uniformity commensurate with taxation of property "in proportion to its value."

As we have concluded that these ordinance provisions had the effect of imposing an additional property tax upon respondent's assignors in contravention of article XIII, sec. 1, of the state Constitution, and for that reason they cannot be sustained, we have no occasion to consider here whether they would also be invalid for other reasons advanced by respondent.

 Since it is well established that a voluntary payment of taxes which have been illegally levied precludes the right of recovery, the next inquiry is whether or not the collections in question were effected by compulsion. The character of the payments—voluntary or involuntary—is to be determined from the terms of the ordinance under which the taxes are imposed, the circumstances attendant upon payment and a consideration of the consequences which might follow upon nonpayment. (*Vitale* v. *City of Los Angeles,* 13 Cal. App. (2d) 704, 706 [57 Pac. (2d) 993].) Ordinance No. 5132, New Series, provided an elaborate system for enforcement of these collections, including penalties for delinquencies running to a maximum of 50 per cent, the right to bring civil actions for the recovery of such taxes and to have writs of attachment issued therein, and criminal liability to the extent of a fine of $500 or imprisonment for a term of six months, or both such fine and imprisonment. It appears from the record that postal cards were sent at intervals from the tax collector's office for the purpose of warning the persons subject to these assessments of the penalties and civil and criminal liabilities; and there were some arrests and prosecutions. Furthermore, appellant admits that during the year 1933 in the course of a drive calculated to expedite these tax payments, the following acts of coercion were committed: trucks not bearing the prescribed license plates were stopped on the city streets, their drivers were escorted to the tax collector's office and were forced to notify their employers they were so held until such time as the money arrived to satisfy the demands made. Appellant urges, however, that otherwise there was no compulsion, and the payments were voluntary because made without

the filing of formal protests and because the tax collector had no power to execute the threats of seizures, confiscations or sequestrations. (*Maxwell* v. *County of San Luis Obispo,* 71 Cal. 466 [12 Pac. 484]; *Brumagim* v. *Tillinghast,* 18 Cal. 265 [79 Am. Dec. 176].) Decidedly *apropos* to the argument thus advanced is the following language from *Young* v. *Hoagland,* 212 Cal. 426, 430, 431 [298 Pac. 996, 75 A. L. R. 654]:

" . . . That case [*Brumagim* v. *Tillinghast, supra*] may have stated the rule of the common law at the time of its pronouncement in regard to voluntary payments, but the rule, as thus announced, has been greatly relaxed in more recent decisions in favor of the recovery of money improperly exacted by a defendant. (21 R. C. L., p. 147.) 'Among the instances of the relaxation of the strictness of the original common law rule is the case of payments constrained by business exigencies, that is payments of illegal charges or exactions under apprehension on the part of the payers of being stopped in their business if the money is not paid. It has been stated that the general rule with regard to duress of this character is that where, by reason of the peculiar facts a reasonably prudent man finds that in order to preserve his property or protect his business interests it is necessary to make a payment of money which he does not owe and which in equity and good conscience the receiver should not retain, he may recover it.' (21 R. C. L., pp. 154, 155.) Upon this same subject we find the following statement in 20 California Jurisprudence, page 964: 'The underlying principle (that money paid under compulsion may be recovered) is said to be that, by the performance of or threat to perform some unlawful act whereby plaintiff will suffer loss, the defendant has induced the plaintiff, under circumstances sufficient to control the action of a reasonable man, to pay money which he would not otherwise have paid.' . . . "

The foregoing recital of the admitted facts in the instant case sufficiently demonstrates that the motivating cause of the payments was fear of infliction of the penalties outlined in the coercive provisions of this well-implemented ordinance and emphasized by periodic and forceful threats and demand warnings by the appellant. Under such evidence of compulsion the payments may properly be characterized as involuntary and made under pressure of the law's duress (*Carpenter* v. *Shaw,* 280 U. S. 363 [50 Sup. Ct. 121, 74 L. Ed.

478] ; *Ward* v. *Love County,* 253 U. S. 17 [40 Sup. Ct. 419, 64 L. Ed. 751] ; *Barker Bros., Inc.,* v. *City of Los Angeles,* 10 Cal. (2d) 603, 610 [76 Pac. (2d) 97] ; *Vitale* v. *City of Los Angeles, supra,* 706 ; *Home Telephone & Telegraph Co.* v. *City of Los Angeles,* 40 Cal. App. 492, 496 [181 Pac. 100]), and such coercive action on the part of appellant rendered formal protests unnecessary. (20 Cal. Jur., p. 968 ; 3 Cooley on Taxation, 4th ed., p. 2584, sec. 1297 ; *Whyte* v. *State of California,* 110 Cal. App. 314, 316 [294 Pac. 417] ; *Grimes* v. *County of Merced,* 96 Cal. App. 76, 82 [273 Pac. 839].) We are therefore of the opinion that these taxes were illegally collected from respondent's assignors by virtue of the ordinance provisions herein declared invalid, and that respondent is entitled to recover the sums so paid within two years prior to the filing of this action.

The judgment is affirmed.

Traynor, J., Shenk, J., Gibson, C. J., Edmonds, J., and Carter, J., concurred.