(Decided December 21st, 1898.)

---

## BARZILLIA BRAMBLE *vs.* STATE OF MARYLAND.

*Appeal in Criminal Cases—Special Plea to Indictment— License to Sell Oysters on Commission—Agreement Construed to Constitute Sale on Commission.*

Upon an indictment, the facts relied on as constituting a defence may be set forth in a special plea, and upon a demurrer thereto the Court will consider the merits of the case on appeal from the judgment.

The traversers were indicted for selling oysters on commission without having obtained a license as commission merchants, according to the Act of 1894, ch. 380. The defence was that the oysters sold were their own property and that they did not sell them on commission. A special plea and the

evidence showed that the defendant's firm owned certain boats, the captains of which were supplied by the firm with money for the purchase of oysters, and for these advances the captains gave their notes to the firm. When the oysters were sold the buyers gave a statement of the sale, etc., to the captains and these claims against the buyers were assigned to the firm. Each captain paid his crew and received 60 per cent. of the gross receipts from the oysters sold, less 1½ cents on each bushel, and the firm received 40 per cent. of the gross receipts plus 1½ cents on each bushel. The buyers of the oysters were procured by the firm and all sales were required to be effected through it. *Held,* that under this agreement the 40 per cent. of the gross receipts of sales is compensation to the firm for the use of its boats and the 1½ cents per bushel is a commission for making the sale, and that consequently the traversers acted in the premises as commission merchants.

Appeal from the Criminal Court of Baltimore City, Part 2 (STOCKBRIDGE, J.).

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE, PAGE, ROBERTS, BOYD and PEARCE, JJ.

*Albert S. J. Owens,* for the appellant.

*Harry M. Clabaugh, Attorney-General,* for the appellee, submitted the cause on brief.

PEARCE, J., delivered the opinion of the Court.

The appellant, together with Wm. A. Harrington and John S. Kirwan, was indicted June 20, 1898, in the Criminal Court of Baltimore for selling oysters on commission in November, 1897, without first obtaining a license therefor, as required by section 67 A, of chapter 380 of the Acts of 1894. On June 24 the case was submitted under plea of *non cul.* to JUDGE STOCKBRIDGE, sitting as a jury. On June 27 a *nolle prosequi* was entered as to Harrington and Kirwan. On September 10,

the case being still pending, a special plea of *non cul.* was filed *nunc pro tunc*, to which a demurrer was on the same day interposed by the State, and thereupon the demurrer was sustained, a verdict of guilty was rendered, and judgment was entered on the verdict and a fine was imposed of one hundred dollars and costs, on the 10th of September, 1898.

On the 13th of September a paper termed in the record "an agreed statement of facts," though more resembling a bill of exceptions, was filed *nunc pro tunc*, and on September 16 this appeal was taken.

The following alleged facts, admitted by the demurrer, appear in the special plea.

That the parties indicted constituted a firm under the name of Bramble, Harrington & Co.; that they were the owners, either in whole or in part of thirteen oyster boats, some of which were dredge boats and others were known as "buy boats," oysters being bought for the cargoes of the "buy boats"; that the dredge boats are licensed to take oysters, the licenses being paid for by the firm, and that the usual property tax is paid on all these boats; that the firm engages a captain for each boat under an agreement that each captain shall employ the crew and pay other incidental and running expenses, he receiving sixty per cent. of gross receipts from oysters, whether caught or bought, less one and a half cents on each bushel of oysters brought to market, the firm receiving forty per cent. of gross receipts, plus the one and a half cents on each bushel of oysters brought to market; that when a cargo of oysters arrives, a member of the firm is notified, who himself notifies the buyer of some packing house, and some member of the firm together with the buyer, visits the vessel, and that the oysters are sold by the captain who receives from the buyer a statement showing the quantity of oysters bought, the price paid, and the amount due the captain therefor, and that no member of the firm has the power to sell, nor attempts to exercise such power; that the firm usually pays the captain the amount due him by the buyer, and takes an assignment of the claim of the

captain against the buyer; and that the one and a half cents per bushel is reserved by the firm " to insure some certain recompense for the boat and money and the labor given by the firm toward the accomplishment of the enterprise "; that all money for the supplies of the dredge boats, and all capital required for the purchase of oysters for the buy boats is furnished by the firm to the captain, who gives the firm a note therefor. The plea further states that the firm has sometimes advanced money to captains of boats in which the firm had no interest, the oysters of which were disposed of in the same manner as those from their own boats, the one and half cents per bushel being received in like manner.

The agreed statement of facts shows that the State introduced as a witness C. C. Conway, a general inspector and measurer of oysters, under the Act of 1894, ch. 380, who testified that each week during the season of 1897-8, he, or some other general inspector, called at the office of the firm, and received from them a statement of the various inspection fees collected by the firm for the inspectors under that Act, and also received from the traverser the money representing his fees and that the traverser signed such statements as follows:

" Commission Merchants name—Bramble, Harrington & Co."

He also testified that he was familiar with the business of selling oysters on commission, and that the regular fee charged by such firms was one and a half cents per bushel for such oysters as they handled, and that the firm name of Bramble, Harrington & Co., appeared in the city directory of 1897 as oyster commission merchants.

It also shows that the traverser to maintain the issue on his part introduced the testimony of each member of the firm, who testified *verbatim* as set forth in the special plea, and in addition thereto testified that the firm had never been engaged in selling oysters on commission and had never sold a single bushel of *consigned* oysters, and that the members of the firm denied all knowledge of their designation in the city directory as oyster commission merchants.

It is suggested by the Attorney-General in his brief that " the record does not measure up in some of the essentials required under the decision of *Salfner* v. *The State*, 84 Md. 299, but inasmuch as a number of other cases depend upon the decision of this case, it is hoped the Court will pass upon this appeal." We do not discover anything in *Salfner's case* which requires us to refuse the consideration of this appeal. In that case it was held that the Act of 1892, ch. 506, regulating appeals in criminal cases, and placing them on the same footing with appeals in civil cases, did not repeal sec. 2, of Art. 5 of the Code, which provides that in prosecutions for the recovery of any penalty, fine or damages, any party may appeal to the Court of Appeals; and it was also held that in such cases " an appeal will lie to this Court upon questions of law apparent upon the face of the record."

In the case now before us, the record shows a judgment imposing a fine, and the case was so presented in the Court below as to place the appellant's defence upon the record, and this being so, the appeal should not be dismissed. *Keller* v. *The State*, 12 Md. 327.

In that case the Court said: " If the defence that the defendant sold lager beer of his own brewing had been pleaded, and the State had demurred to the plea, the point would have appeared by the record. Instead of this mode of proceeding, however, the State and the accused made an agreement of facts according to a practice which has obtained in this State for many years, by which the case was submitted to the Court. The office of the Court was to declare the law upon the facts admitted. This proceeding with us has almost entirely taken the place of special verdicts as being more convenient, yet serving the same purposes, and is governed by the same principles. Like special verdicts, the effect is to place the facts on the record as part thereof, on which the Court decides *as on demurrer*." Mr. Chitty says, " The jury have a right in all cases whatever, to find a special verdict by which the facts of the case are put on the record and the law is submitted

to the judges "; and the Court in *Keller's case,* comment-
ing on this citation, says, " If in civil proceedings a
different form has been generally adopted for submitting
the law to the Court, why may not the same mode be
resorted to in prosecutions?   The considerations of con-
venience, and facility for trial, apply as well to one as
to the other, and we think the same practice should be
allowed in both classes of cases."

In the case before us, the substance of defendant's
plea is that they sold their own oysters, and therefore
did not and could not have sold them on commission.
The State demurred to the plea and the point thus ap-
pears by the record.   After the filing of this plea and
the demurrer thereto, the agreement of facts was filed,
apparently to enlarge the scope of the pleading.   The
agreement is not in form a case stated, and contains no
stipulation that the Court shall enter judgment, the
one way or the other as, upon the facts the law may be
found, or held to be, as is said in *Salfner's case,* should
always be done under an accurately drawn case stated;
but this omission was waived in that case and the appeal
was considered, and so far as this case depends upon the
agreed statement of facts we shall follow that precedent.
But even if we regarded this omission as depriving the
Court of the authority to enter a judgment upon the
findings on the agreed statement of facts, it would still
be our duty to consider the case made by the special plea
and the demurrer thereto.   We shall therefore consider
the merits of the case both upon the demurrer and the
agreed statement of facts.

We have already said that as we understand the spe-
cial plea and the testimony on the part of the traverser
in the agreed statement of facts, its substance is that the
oysters sold were the property of the firm and therefore
were not and could not have been sold on commission;
and if the agreement set forth in the plea and in the
agreed statement of facts will by any fair and reasonable
construction support such a conclusion, it must be ad-
mitted that as to the sale of such oysters, the conviction
cannot be sustained.   The demurrer admits all the *facts*

*well pleaded*, and if it clearly appears from the language
of the agreement thus set up and relied on, that the
oysters sold under it, were the property of the traverser's
firm, that would become one of the admitted facts, and
would be decisive of the case so far as relates to those
particular sales.    But that fact must clearly and satis-
factorily appear from the language employed in stating
the agreement, and cannot be assumed from uncertain,
ambiguous or merely argumentative language; and after
a careful consideration of the language of the plea and
of the agreed statement of facts, we cannot find any
distinct and open averment of ownership by the firm
sufficient to conclude the State under its demurrer.
The special plea and the agreed statement of facts show
that the firm furnished all money for supplies and for
the purchase of oysters to the captains, *who give the
firm notes for this money*.    The giving of these notes is
a most significant feature in the transaction and we think
shows that the captain is designed to be by the agree-
ment, and is in legal contemplation, the owner of the
oysters.    The giving of such a note is consistent with
such ownership and is inconsistent with any other con-
struction in this regard.    This conclusion is strength-
ened by the further fact that when the oysters are sold,
the buyer gives, *not to the firm, but to the captain*, a state-
ment showing the amount due on each purchase, *not to
the firm, but to the captain*, and the *firm* pays the captain
the amount so due, and takes from the captain an assign-
ment of *his claim against* the buyer.    If this be the true
intent and result of the agreement, the forty per cent.
of the gross receipts of sales is compensation for boat
hire and the one and a half cents per bushel is commis-
sions for procuring a buyer or effecting a sale.    The
40 per cent. insures a certain recompense for the boat
and money advances, and there is no " *labor* given by
the firm towards the accomplishment of the enterprise "
(to use the language of the plea) except that of secur-
ing a buyer, and that is compensated by the one and a
half cents per bushel.    The captains are required to re-
port all cargoes to the firm, to effect all sales through

the firm's agency, and to assign to the firm all claims for sales made, in order to secure to the firm the payment of all notes given for loans or advances and the forty per cent. of gross receipts, and to secure to the firm a monopoly of the commissions on all sales. This we think is the fair and reasonable construction of the agreement set up, and it is supported and confirmed by the testimony of the general inspector, by the character of the statements rendered to him by the traverser, and by the appearance on the city directory of the firm's name as oyster commission merchants, as well as by their own admission that they have sometimes received the one and a half cents per bushel on oysters to which they had no claim of title whatever. It is not necessary that oysters should be formally consigned to them as commission merchants—if they act as such without formal consignment in procuring a purchaser and thus effecting a sale.

But even if we are in error in the views we have thus expressed as to the ownership of the oysters sold under the agreement set up, and if they can be held to be the property of the firm, still their explicit admission that they have received from the sales of other oysters the same commission which it is shown licensed commission men receive from such sales, brings them clearly within the operation of the Act and sustains the conviction.

The judgment of the Criminal Court will therefore be affirmed.

> *Judgment affirmed with costs above and below.*

(Decided December 21st, 1898.)