THE UNION CENTRAL LIFE INSURANCE COMPANY, APELANTE, *v.* GROMER, TESORERO DE PUERTO RICO, APELADO.

APELACIÓN procedente de la Corte de Distrito de San Juan, Sección 2ª.

No. 824.—Resuelto en junio 27, 1913.

CONTRIBUCIONES — CORPORACIONES EXTRANJERAS — CRÉDITOS HIPOTECARIOS. — Los préstamos que una corporación extranjera domiciliada en los Estados Unidos hace por medio de un agente en Puerto Rico, encargado de examinar las proposiciones de préstamos y remitirlas al domicilio de la corporación en los Estados Unidos para su aprobación y garantizados por medio de hipotecas sobre tierras radicadas en Puerto Rico, para los fines de contribuciones se consideran créditos situados en el domicilio del acreedor, y para que se le pueda imponer contribución en el domicilio del deudor, es necesario que la ley del Estado de éste expresamente lo disponga así.

ID.—CRÉDITOS HIPOTECARIOS—BIENES MUEBLES.—De acuerdo con la ley vigente en Puerto Rico el dueño de una finca hipotecada paga contribución por el valor total de la propiedad sin deducir el importe de la hipoteca y ésta para los fines de contribución es lo mismo que si fuera bien mueble.

ID.—CRÉDITOS PERSONALES.—De acuerdo con la sección 290 enmendada del Código Político los créditos personales están expresamente exentos de contribuciones.

ID.—CRÉDITOS HIPOTECARIOS PERTENECIENTES A CORPORACIONES—INTERPRETACIÓN DE LEY.—Cuando un estatuto puede ser interpretado de distinta manera es necesario adoptar aquella interpretación que esté en armonía con la Constitución y que lo mantenga vigente, y de acuerdo con esta regla la sección 320 del Código Político en relación con la 290 del mismo código sería anticonstitucional si se interpretara en el sentido de que los créditos hipotecarios poseídos por una corporación extranjera domiciliada fuera de Puerto Rico están sujetos al pago de contribución, mientras que los mismos créditos, si pertenecen a un individuo, no lo están.

ID.—IMPOSICIÓN DE CONTRIBUCIONES A CRÉDITOS EXTRANJEROS.—La imposición y cobro de contribuciones a créditos hipotecarios pertenecientes a una compañía extranjera domiciliada fuera de Puerto Rico, cuyos créditos se consideran situados en el domicilio del acreedor, constituiría una infracción de la enmienda 14 de la Constitución de los Estados Unidos que prohibe el privar a ninguna persona de sus bienes sin el correspondiente juicio de acuerdo con la ley.

ID.—CORPORACIONES EXTRANJERAS—INVERSIÓN DE DINERO EN CRÉDITOS HIPOTE-
CARIOS.—El capital que una corporación extranjera de aseguros de vida domi-
ciliada fuera de Puerto Rico, que no tiene oficina en esta Isla ni se dedica
en ella al negocio de aseguros, invierte en préstamos con garantías hipote-
carias sobre bienes inmuebles radicados en esta Isla, no constituye capital
empleado en sus negocios dentro de esta Isla, ni puede decirse que esté dedi-
cada a hacer negocios en la misma, dentro de la significación que estas frases
tienen.

ID.—CORPORACIONES—TASACIÓN DE LA FRANQUICIA PARA HACER NEGOCIOS.—Para
imponer y cobrar contribuciones a una corporación por su franquicia para
dedicarse a negocios en esta Isla, es necesario tasar expresamente dicha fran-
quicia e imponerle contribución de acuerdo con su verdadero valor.

ID.—CRÉDITOS PERTENECIENTES A PERSONAS FUERA DE PUERTO RICO.—Los créditos
personales se consideran situados para los fines de contribución en el domicilio
del acreedor y, por tanto, cuando éste reside fuera de Puerto Rico, la Legis-
latura no tiene facultades para imponer contribución a dichos créditos.

ID.—PAGO BAJO PROTESTA.—Habiendo la corporación demandante pagado bajo
protesta las contribuciones impuestas por el Tesorero sobre los créditos hipo-
tecarios poseídos en esta Isla, procede su devolución a dicha corporación.

Los hechos están expresados en la opinión.

Abogados del apelante: *Sres. López Landrón, Rincón* y
*Francis.*

Abogado del apelado: *Sr. Wolcott H. Pitkin, Jr., Attorney
General de Puerto Rico.*

*Amicus curiae:* Sr. J. Henri Brown.

EL JUEZ ASOCIADO SR. MACLEARY, emitió la opinión del tri-
bunal.

El día 23 de junio de 1911 la demandante entabló una ac-
ción ante la Corte de Distrito de San Juan contra el deman-
dado como Tesorero de Puerto Rico, de conformidad con la
ley número 35 aprobada el 9 de marzo de 1911, para obtener
la devolución de cierta suma de dinero pagada bajo protesta
por contribuciones que se le habían impuesto durante el año
fiscal de 1910–1911. En 30 de junio de 1911 el demandado
formuló su contestación.

Se alega en la demanda y no ha sido negado en la contes-
tación o en la prueba y considerado probado por la corte infe-
rior, que la demandante era en la fecha en que esta acción
fue entablada, una compañía extranjera anónima por accio-
nes, organizada y existente bajo las leyes del Estado de Ohio,

con el objeto de asegurar las vidas de personas dentro y fuera de dicho Estado, y que la demandante efectúa operaciones como tal compañía en Ohio, bajo el nombre que tiene como tal corporación; que la demandante estaba debidamente registrada bajo las leyes de Puerto Rico en la oficina del Secretario de Puerto Rico como una corporación extranjera y había pagado la contribución por el negocio a que se dedicaba, habiendo cumplido además debidamente con todos los requisitos de la ley necesarios para capacitarla como tal, para efectuar negociaciones en Puerto Rico y comparecer en las cortes insulares; que la demandante estaba representada de acuerdo con las disposiciones del estatuto en Puerto Rico por el agente debidamente autorizado, con residencia en esta isla, José C. Barbosa, de San Juan, Puerto Rico; y además que el demandado era el Tesorero de Puerto Rico debidamente nombrado, capacitado legalmente y actuando como tal.

Se alega en la contestación y ha sido sostenido por la prueba y declarado probado por la corte sentenciadora, aunque por deducción al parecer, que el Tesorero de Puerto Rico dió un valor a la propiedad de la demandante para los fines de la tasación durante el año fiscal de 1910–1911 de $211,402, fijándose una contribución a dicha propiedad que ascendía a la suma de $3,382.44, cuya cantidad en unión de los recargos ascendentes en su totalidad a la suma de $3,621.73 fué satisfecha al Tesorero de Puerto Rico bajo protesta el día 25 de mayo de 1911.

No se ha probado que la compañía demandante haya asegurado vidas en Puerto Rico, pero aparece que ha prestado dinero, garantizado por hipotecas sobre bienes inmuebles en esta Isla, alcanzando un total estos préstamos durante el mes de abril, 1910, de $211,402. Una parte de esta suma, o sean $31,000 fué dada en préstamos después del día de 31 de enero de 1901 y con anterioridad al día 10 de marzo de 1904.

La compañía demandante tiene un agente con residencia en la ciudad de San Juan, Puerto Rico, por medio de quien

ha llevado a efecto sus operaciones en esta isla.  Dicho agente previamente se relacionaba con aquellas personas que deseaban hacer préstamos con la demandante y enviaba a la oficina de esta última en Cincinnati, Ohio, los papeles o documentos necesarios relativos a dichas negociaciones, aceptando o nó entonces la demandante el negocio que se le proponía. Si aceptaba la proposición, los documentos notariales que garantizaban los préstamos con hipotecas se otorgaban en Puerto Rico e inscribían en el correspondiente registro de la propiedad.  Los préstamos así concertados eran pagaderos en Cincinnati, Ohio, pero por lo menos algunos de los plazos e intereses que hasta ahora han sido cobrados se han pagado por conducto del Banco Colonial Americano de San Juan de Puerto Rico.

El día 21 de septiembre de 1910 el Tesorero de Puerto Rico dirigió una comunicación a la compañía demandante avisándole, que el primero y segundo plazos de contribuciones para el año fiscal de 1910–1911, ascendente a $3,382.44 se debía y debía pagarse sin demora alguna.  Las contribuciones en cuestión no habían sido satisfechas y el día 18 de marzo de 1911 el Tesorero envió otra comunicación al agente de la demandante en San Juan, manifestándole, que a menos que las cantidades vencidas y que se debían por concepto de contribuciones fueran pagadas, serían cobradas mediante embargo y venta de una parte de la propiedad por la cual se debían.  No habiéndose cumplido con dicha reclamación no obstante esta carta, se establecieron procedimientos, de embargo con el fin de cobrar dicha suma sobre una hipoteca constituída a favor de la demandante en garantía de la suma de $7,000, en ciertas fincas rústicas situadas en Arecibo, Puerto Rico.  En estas condiciones la demandante pagó la suma reclamada bajo protesta y entabló la acción que ha dado origen a esta apelación fundada en las disposiciones de nuestro estatuto, Ley número 35 de 1911, Leyes de 1911,

página 132. Estos hechos pueden ser considerados como no controvertidos.

Tres son las cuestiones de hecho importantes en controversia entre las partes, las que pueden sustancialmente expresarse como sigue: (1) Si la demandante poseía o nó bienes muebles en Puerto Rico durante el año fiscal 1910–1911. (2) Si durante dicho año fiscal poseía o nó dicha demandante bienes inmuebles en Puerto Rico, excepto las siete hipotecas que montaban a la suma de $31,000 otorgadas entre el día 31 de enero de 1901 y el día 10 de marzo de 1904, sobre las cuales se pagó una contribución para el año fiscal de 1910–1911, antes de hacerse el embargo para el cobro de estas contribuciones. (3) Si estaba o nó dedicada la demandante a un negocio en Puerto Rico o tenía alguna parte de su capital empleada en negocios en esta Isla durante el año fiscal de 1910–1911. Se verá más adelante que en lo que a este caso se refiere, todas estas cuestiones deben ser contestadas negativamente.

En 26 de octubre de 1911 se celebró el caso en la sección segunda de la Corte de Distrito de San Juan, ante el juez Hon. Charles E. Foote, quien, el día 31 de octubre de 1911, formuló sus conclusiones de hecho por escrito y dictó sentencia a favor del demandado, desestimando la demanda con costas a la demandante. El día 9 de noviembre de 1911 se interpuso apelación contra dicha sentencia para ante este tribunal y en 2 de marzo de 1912 los autos fueron debidamente aprobados y certificados. Se celebró la vista del pleito ante este tribunal en 15 de noviembre de 1912, habiendo sido sometido el caso por los informes orales y los alegatos impresos presentados por ambas partes.

Los hechos del caso que son esenciales a esta discusión según ha sugerido el Attorney General en representación del apelado, pueden resumirse en la forma siguiente: Una corporación de Ohio o compañía anónima por acciones nombró un agente en Puerto Rico y cumplió con las leyes sobre cor-

poraciones extranjeras pagando una patente anual por contribuciones, redactando informes, etc., permitiéndosele que hiciera negocios en Puerto Rico. Esta facilitaba dinero en calidad de préstamo a los propietarios de fincas en Puerto Rico, tomando el agente las medidas necesarias para que el propietario que tomaba prestado el dinero y la compañía vinieran a un acuerdo y cerraran las negociaciones constituyendo hipotecas sobre las fincas como garantía de dichos préstamos. Los pagarés e hipotecas los guardaba dicha compañía y todavía los guarda en su oficina principal en Ohio. Durante un año o más con anterioridad a la imposición de esta contribución no se habían hecho nuevos préstamos, pero su patente había sido renovada y los préstamos e intereses fueron cobrados por conducto de un banco de Puerto Rico, y durante el año fiscal en cuestión la compañía poseía préstamos procedentes de sus negocios que de tal modo efectuaba, ascendentes a la suma de $211,402, garantizados con fincas en Puerto Rico, cuyas hipotecas habían sido debidamente inscritas aquí.

Al discutir las cuestiones envueltas en este caso no nos limitaremos estrictamente al método seguido ya por el apelante o el apelado en su alegatos e informes orales, sino que trataremos de considerar todas las cuestiones presentadas por cualquiera de los mismos. En primer lugar es conveniente que examinemos la naturaleza de los bienes sobre los cuales se ha impuesto esta contribución y el lugar en que se encuentran en relación con la facultad legislativa de imponer contribuciones sobre dichos bienes.

La contribución impuesta en este caso parece ser sobre el capital que el apelante tiene empleado en negocios en Puerto Rico. Lo que la compañía ha hecho es esencialmente facilitar dinero a préstamo en Puerto Rico. Dicho dinero no está empleado en negocios de la demandante, sino que según aparece de los autos es una inversión en la Isla que debe presumirse ha sido empleado por residentes de Puerto Rico

en sus propios negocios. El capital que la compañía tiene
aquí empleado aun cuando se creyera que estuviera prestando
dinero, consistiría más bien de la suma necesaria para sostener
una oficina o un agente en esta Isla, si en realidad tenía algún
capital empleado en llevar a cabo el negocio de prestar dinero.

Se ha sugerido además que como esta contribución se im-
pone sobre hipotecas constituídas sobre fincas, éstos son
bienes inmuebles y sujetos al pago de las contribuciones como
tales. Las escrituras de hipoteca son simplemente las garan-
tías del préstamo. No se trata de imponer contribución sobre
las mismas hipotecas sino al capital invertido en préstamos
garantizados por hipotecas. La naturaleza esencial de las
cosas en existencia son deudas de personas residentes en
Puerto Rico a la demandante. Son créditos en poder de la
demandante y siendo tales créditos siguen éstos a la persona
del acreedor. *"Mobilia sequuntur personam"* es la máxima
legal que es enteramente aplicable.

En *Kirtland* v. *Hotchkiss*, 100 U. S., 498, la corte se ex-
presa como sigue:

"Esa deuda, aunque es una especie de propiedad abstracta, puede,
sin embargo, para los fines de la contribución, sino para todos los
demás, ser considerada que está en el domicilio del acreedor. No deja
de ser menos considerada como propiedad porque su cuantía y ven-
cimiento aparecen especificados en una fianza. Esa fianza en donde-
quiera que realmente se tenga o esté depositada constituye solamente
la prueba de dicha deuda, y si se pierde, queda la deuda, o sea el
derecho que hay para exigir el pago de la suma prestada con los inte-
reses estipulados. Ni está la deuda para los fines de la contribución
afectada, por el hecho de que se encuentra garantizada con hipoteca
sobre bienes inmuebles situados en Illinois. La hipoteca no es sino
una garantía por la deuda y según se ha resuelto en el caso de *State
Tax on Foreign-held Bonds*, el derecho del acreedor para proceder
contra la finca hipotecada en determinado caso para hacer efectivo
por la venta el pago de su reclamación, * * * no tiene sitio in-
dependiente de la parte en quien reside. Puede indudablemente fijár-
sele una contribución por el Estado cuando lo tiene una persona resi-
dente de dicho Estado. Cooley on Taxation, 15, 63, 134, 270. Te-
niendo, por tanto, la deuda su *situs* en la residencia del acreedor,

tanto él como ella se encuentran para los fines de la contribución dentro de la jurisdicción del Estado. Corresponde, por consiguiente, al Estado determinar de modo compatible con su propia ley fundamental, si la propiedad perteneciente a uno de sus residentes habrá de contribuir por vía de tasación al sostenimiento de su gobierno.''

Véase también el caso de *Bank* v. *Sedgwick,* 104 U. S., 111. En el caso de *Meyer v. Pleasant,* 41 La. Ann., 645, la corte resolvió que las deudas tenían su *situs* en el domicilio del dueño, aun cuando se redujeran a sentencia en el domicilio del deudor, y podía fijarse una contribución solamente en la residencia del acreedor.

En el caso de *Liverpool and London and Globe Insurance Company* v. *The Board of Assessors,* 44 La. Ann., 764, que fué un caso seguido contra la compañía de aseguros, la corte cita con aprobación de la obra de Cooley on Taxation, lo siguiente:

''Es un hecho también admitido que pueden imponerse contribuciones a las corporaciones lo mismo que a personas naturales sobre sus bienes y negocios, pero las deudas que se deben a los acreedores en el extranjero, ya sean éstos corporaciones o individuos particulares, no están sujetos al pago de la contribución. No puede imponerse una contribución al acreedor porque no está dentro de la jurisdicción y no puede imponerse una contribución a las deudas que estén en poder del deudor debido a una ficción de derecho que deberá considerarlas para este fin como bienes de los deudores. Ellas no constituyen bienes de los deudores en manera alguna; son obligaciones de éstos y solamente tienen valor en manos de los acreedores. En poder de éstos son bienes, pero el considerarlas así cuando se encuentran en poder de los deudores es simplemente un uso equivocado del lenguaje.'' *Com.* v. *Chesapeake & O. R. Co.,* 27 Grat. (Va.), 344; *Oliver* v. *Washington Mills,* 11 Allen (Mass.), 268; *Mayor, etc., of City of Macon* v. *Jones,* 67 Ga., 489; *San Francisco* v. *Mackey (C. C.),* 22 Fed., 602; *Goldgart* v. *People,* 106 Ill., 25; *Kirtland* v. *Hotchkiss,* 100 U. S., 496 (25 L. Ed., 558).

''El mero derecho de un acreedor extranjero a recibir de su deudor dentro del Estado el pago de su reclamación, no puede estar sujeto a que se le imponga una contribución dentro del Estado.'' Cooley on Taxation, página 15.

Véase también las siguientes notas monográficas: 56 Am. Dec., 529, y 62 Am. St. Rep., 452. En la última de éstas, entre otras observaciones pertinentes el ilustrado comentarista dice lo siguiente:

"*Contribuciones sobre derechos y acciones de bienes muebles en general.*—Es una regla general que ha sido reconocida no solamente por las cortes de Estado sino por las de los Estados Unidos, que el *situs* de los bienes muebles abstractos así como los derechos sobre bienes muebles, pagarés, cuentas, etc., es para los fines de la contribución, y a falta de algún estatuto que determine un *situs* diferente, en el domicilio del dueño; y si la Legislatura deja de fijar el lugar de dicha propiedad para los fines de la contribución, es evidente que debe considerarse que dicho lugar es el del domicilio de su dueño, lo mismo cuando se trata de corporaciones que de individuos particulares o albaceas. *Grundy County* v. *Tennessee Coal Co.*, 94 Tenn., 295, 317, per Wilkes, J.; nota monográfica a los casos de *New Albany* v. *Meekin,* 56 Am. Dec., 523–537; Matter of Bronson, 150 N. Y., 1; 55 Am. St. Rep., 632; *State* v. *Earl*, 1 Nev., 394; *Kirtland* v. *Hotchkiss*, 100 U. S., 491, 499, confirmando a *Kirtland.* v. *Hotchkiss*, 42 Conn., 426; 19 Am. Rep., 546; *Bonaparte* v. *Tax Court*, 104 U. S., 592. La cuestión relativa al *situs* de determinados derechos y acciones de bienes muebles para los fines de la contribución ha sido discutida en otras partes de esta nota bajo los epígrafes adecuados."

Por consiguiente, resulta enteramente, claro que el *situs* de una deuda para los fines de la contribución es el del domicilio del acreedor, en donde puede fijársele una contribución como propiedad. Sin embargo, en ciertos casos puede fijársele una contribución por el Estado, con tal de que el Estado exprese claramente su intención de fijar así la contribución. Y no establece diferencia alguna el hecho de que dicha deuda esté garantizada o nó por hipoteca, según hemos visto en el caso de *Kirtland* v. *Hotchkiss, supra,* cuyo caso es uno de los principales sobre el que giran las demás resoluciones mientras siguen su curso.

Cuando el Estado pretende imponer una contribución a los créditos en poder de personas que se encuentran fuera del Estado o en el domicilio del deudor, debe hacerlo en lenguaje

inequívoco como puede verse en el caso de *Savings Society* v. *Multnomah County,* 169 U. S., 421. En ese caso se impone la contribución sobre la hipoteca constituída en Oregon porque los intereses de la misma se consideran allí como bienes inmuebles, hasta la suma de su valor, y tanto al creedor como al deudor hipotecario se les exige que paguen contribuciones sobre los respectivos intereses en la propiedad de acuerdo con su valor. La contribución se divide entre ellos por el estatuto. Esto es distinto en Puerto Rico donde se paga la contribución por el dueño sobre los bienes por su valor total, y en este caso la hipoteca ha sido considerada como propiedad mueble y como tal se le ha impuesto la contribución. De todos modos es el estatuto el que determina donde ha de imponerse la contribución a la propiedad.

El caso de *Liverpool, etc., Insurance Co.* v. *Orleans Assessors,* 221 U. S., 346, fué citado por el apelado para probar que el Estado tiene tal facultad y este principio puede ser verdadero, pero en dicho caso el Estado de Louisiana había establecido un precepto claro en la ley estatutoria imponiendo dicha contribución, y expresa la corte al hacer referencia al caso de Kirtland, que en un caso como el que ha sido citado no hubo tentativa alguna por parte de la legislatura para invalidar la regla ordinaria con respecto a la cuestión relativa al *situs* de la deuda en la residencia del acreedor.

No solamente tal intención deja de aparecer en ninguna legislatura de El Pueblo de Puerto Rico, sino que en el artículo 290 del Código Político tal como ha quedado enmendado, quedan específicamente exceptuados los créditos personales. El Hon. Foster V. Brown, Fiscal General de Puerto Rico dice:

"Al quedar enmendada por la Legislatura de 1904, dicha sección, disponiendo que los bienes muebles no comprenderán cuentas corrientes, pagarés, ni ningún otros créditos personales, fué la intención de la Legislatura eximir esta clase de bienes del pago de contribuciones, pues de otro modo la enmienda del artículo no hubiera

tenido objeto alguno." 3 Opiniones del Attorney General de Puerto Rico, pág. 332.

Constituyendo los créditos personales en poder de la Compañía de Seguros el capital sobre el cual se trató de imponer la contribución en este caso, no ha quedado sujeto al pago de la contribución por la Legislatura de Puerto Rico, y el hecho de que se encuentra asegurado por hipoteca según hemos visto, no establece diferencia alguna, no habiendo mostrado la legislatura intención alguna de imponerle una contribución como tal. El caso podría resolverse por virtud de estas consideraciones, pero con el fin de aclarar más nuestro criterio en cuanto a la cuestión, pasaremos a discutir el asunto con más amplitud.

Ahora pasamos a una cuestión constitucional que debe ser resuelta por el orden correspondiente. Esta es la siguiente: ¿Es inconstitucional el artículo 320 del Código Político considerado en relación con el 290 de dicho código, si se interpreta en el sentido de que el mismo impone contribuciones a los créditos hipotecarios que se encuentran en poder de corporaciones, estando esta clase de créditos exentos de dicho pago de contribución, cuando se encuentran en poder de personas particulares ya sean éstas residentes o nó de la Isla? Desde luego que, al considerar esta cuestión, debemos tener presente que un estatuto puede por sí estar perfectamente de acuerdo con la Constitución, pero que si se le da cierta interpretación pudiera encontrársele en pugna con la misma. Por tanto la primera cuestión que debemos tener presente es si existe o nó algo en los artículos 290 y 320 del Código Político de Puerto Rico que, interpretado debidamente, demuestre que dichos artículos se encuentran en conflicto con la cláusula de la Enmienda XIV a la Constitución de los Estados Unidos, que prohibe que se niegue a ninguna persona la igual protección de las leyes. Si no es la intención de estos dos artículos considerados en conjunto, imponer contribuciones a las hipotecas en poder de las corporaciones, cuando las

mismas se encuentran exentas de dichas contribuciones por
estar en poder de individuos particulares, desde luego no
puede alegarse que existe la negativa.  No aparece tal inten-
ción en estos estatutos y por consiguiente no podemos decla-
rar que ellos tengan tal objeto.  Por tanto es fácil deducir la
proposición de que no existe absolutamente nada en los esta-
tutos que niegue a alguien la igual protección de las leyes o
que esté esencialmente en pugna con esta cláusula de la En-
mienda XIV.

Una cuestión constitucional semejante a ésta surge si con-
sideramos estos créditos hipotecarios como bienes muebles
que tienen su *situs* en el domicilio de su dueño en el Estado
de Ohio, y fuera de la jurisdicción y de la facultad que para
fijar contribuciones tiene Puerto Rico, imponiendo la con-
tribución sobre la propiedad sin el debido procedimiento de
ley y por tanto en contraposición con otra cláusula de la En-
mienda XIV a la Constitución.  Es un hecho admitido que
esta contribución se impone sobre los bienes muebles.  El
*situs* de los mismos sigue a la persona de su dueño cuyo domi-
cilio está fuera de esta Isla.  Nuestra legislatura no tiene
facultad para imponer contribuciones sobre tal propiedad; por
tanto, el tratar de hacerlo constituye una infracción de la ley
constitucional.  El cobro de una contribución en estas condi-
ciones equivaldría a quitarle la propiedad al dueño sin el
debido procedimiento legal, siendo esto contrario a la En-
mienda XIV.  5 Thomp. on Corporations, 726–728; *Peo-
ple* v. *Whartenby*, 38 Cal., 466; *People* v. *Eastman*, 25 Cal.,
604; *Falkner, Bell & Co.* v. *Hunt*, 16 Cal., 171; *Delaware,
L. & W. R. Co.* v. *Penn.*, 198 U. S., 358; *Louisville Ferry Co.*
v. *Ky.*, 188 U. S., 385.  Por consiguiente, no podemos presumir
que la legislatura tuviera la intención de que tal interpreta-
ción se diera a estos estatutos.  Ellos deben ser interpretados
de manera tal que sean compatibles con la Constitución y
conserven su validez y no de ninguna otra manera.

Desde luego resulta claro que de acuerdo con una de las

reglas principales de interpretación, los artículos 290 y 320 del Código Político deben ser interpretados conjuntamente para llegar a conocer su verdadero significado y determinar cuál fué la intención de la legislatura. 1 Fed. Statutes Ann., pág. XXVI; *McBroom v. Scottish Mortgage and Land Investment Company,* 153 U. S., 323; *Pennington v. Coxe,* (2 Cranch), 6 U. S., 52.

También ha quedado establecido de igual modo como regla de interpretación, que el estatuto de un Estado deberá ser interpretado de modo tal, que de ser posible resulte compatible con la Constitución Federal y la del Estado y las leyes válidas del Congreso. *Presser v. Illinois,* 116 U. S., 269. Este principio tiene una influencia mayor que la de ordinario en casos en que a las cortes federales se les llama la atención para que declaren nulas las leyes de rentas internas de un Estado. *St. Louis National Bank v. Papin,* 4 Dill. (U. S.), 32. Y debe presumirse que se ha hecho referencia al estatuto de un Estado en vista de las anteriores resoluciones de la Corte Suprema de los Estados Unidos que determinan límites constitucionales o legislación sobre la materia precisa del estatuto. *Banks v. Manchester,* 23 Fed Rep., 145. Véase 1 Federal Stats. Ann., página 62.

Por tanto, debemos investigar cuál fué la intención de la Legislatura de Puerto Rico al aprobar estos estatutos. No puede negarse que de acuerdo con el artículo 290 del Código Político, los créditos en poder de individuos particulares están exentos del pago de contribuciones. ¿Puede entonces alegarse que la misma clase de bienes cuando se encuentran en poder de corporaciones extranjeras o domésticas están sujetos al pago de contribucion? Tal es la alegación que presentan los apelados en este caso. Con una distinción o favoritismo como éste entre corporaciones e individuos particulares, nos parece que se niega a las primeras la igual protección de las leyes. Evidentemente, con la interpretación dada a estos estatutos por el Tesorero de Puerto Rico, las

corporaciones o personas artificiales están obligadas a pagar contribuciones sobre bienes que estarían exentos de dicho pago si se encontraran en poder de personas naturales y tal interpretación del estatuto establece una diferencia o clase que prohibe la Enmienda XIV. De modo que tal interpretación del estatuto no puede recibir nuestra aprobación. Por consiguiente, ciertamente que no puede presumirse que haya sido la intención de la legislatura establecer una diferencia de esta clase. Debemos adoptar aquella interpretación del estatuto por la cual éste resuelte en armonía con la Constitución y conserve su validez. *Wells* v. *Green Bay & Co.,* 90 Wis., 442; *State* v. *State Board of Assessors,* 48 N. J. L., 1; 5 Thompson on Corporations, 708 y 709; 1 Cook on Corporations, sección 8, páginas 39, 40 y 41.

Siguiendo una indicación presentada por vía de ilustración durante el informe oral ante este tribunal, podemos contestar la siguiente cuestión en esta forma, a saber: ¿Podría fijarse una contribución a los bonos de El Pueblo de Puerto Rico de acuerdo con la interpretación dada a los artículos 317 y 320 del Código Político por el Tesorero? Dichos bonos están expresamente exentos del pago de contribuciones de conformidad con los estatutos de esta Isla, pero si la interpretación que da el Tesorero a estos estatutos es correcta y todos los bienes muebles en poder de las corporaciones extranjeras o domésticas en cuanto a ese particular han de ser considerados como parte de su capital social para los fines de la contribución y como tal se les incluye al hacerse la tasación, entonces los bonos del Gobierno Insular, aunque estén expresamente exentos del pago de contribuciones de acuerdo con otros artículos del estatuto, estarían incluídos en los bienes pertenecientes a la corporación sujetos al pago de contribuciones, de igual manera que los créditos hipotecarios o pagarés o cualquiera otra propiedad. No podemos presumir que la legislatura alguna vez tratara de llegar a ese resultado mediante la interpretación de los estatutos que se han decre-

tado con respecto a la contribución y ha quedado bien determinado él hecho de que la intención de la legislatura para imponer una contribución sobre créditos hipotecarios, debe aparecer claramente del propio texto legal. *U. S.* v. *Wigglesworth,* 2 Story 369; el mismo caso, 28 Fed. Cases, páginas 595–597. Caso número 16690.

Pasaremos ahora a considerar otro punto que se presenta en la debida consideración de este caso. Esto puede ser expresado como sigue: Pero aun asumiendo que la interpretación dada a estos estatutos por el apelado sea correcta, ¿aparece *claramente* del texto del estatuto mismo, la intención de la legislatura de imponer una contribución a los créditos hipotecarios pertenecientes al apelante?

Al leer el estatuto debemos confesar que es algo obscuro y debemos referirnos a la explicación hecha por el Attorney General en cuanto a la significación que le ha dado el Tesorero. En contestación a una pregunta que se hizo durante el informe oral, el distinguido abogado del apelado expresó que estos créditos hipotecarios eran considerados por el Tesorero como bienes muebles, habiendo sido tasados por él para los fines de la contribución en tal carácter. El Attorney General anterior, Hon. Foster V. Brown, expresa en cuanto a esta ley que "es algo indefinida e indecisa con respecto a la responsabilidad de esta clase de bienes (créditos personales o hipotecas), para los fines de la contribución." Tomo 3, Opinions of Attorney General of Porto Rico, pág. 329. Creemos que la interpretación que ha dado el Gobierno en este caso es bastante confusa y considerando el estatuto a la luz de esa interpretación, no aparece claramente la intención de la legislatura, ni podemos fácilmente determinar con precisión cuál fué la intención de la legislatura con respecto a la imposición de contribuciones sobre los créditos hipotecarios en poder de las corporaciones extranjeras. Por tanto, de acuerdo con el principio expresado en el caso de Wigglesworth a que hemos hecho referencia, no puede interpretarse

la ley en el sentido de que se impone una contribución a dichos créditos, sino que por el contrario, según hemos visto, no pueden imponerse las expresadas contribuciones.

Según el método que parece observarse en la Tesorería Insular al hacer las tasaciones de la propiedad de las corporaciones para los fines de la contribución, se nos ocurre preguntar: ¿Puede fijarse legalmente una contribución sobre las franquicias de una corporación, meramente aumentando la valoración de sus bienes empleados, hasta cobrar el valor de la franquicia, sin que se haga una tasación específica sobre las franquicias, como parece ser la interpretación que ha dado el apelado en cuanto al objeto del artículo 317 del Código Político?

A las franquicias lo mismo que a otros bienes puede imponérseles contribución y deberá fijársele la misma de conformidad con nuestros estatutos.   Art. 290 del Código Político. Pero para que pueda fijarse una contribución deben ser tasadas debidamente.   La enumeración de los bienes empleados en la tasación para los fines de la contribución deberá ajustarse a la clasificación que se emplea en el estatuto; no siendo necesario que se haga una relación específica detallada. *Falkner, Bell & Co.* v. *Hunt,* 16 Cal., 173.   Con el mero hecho de englobar todo el remanente de valores a los cuales pueden imponerse las contribuciones en una partida denominada bienes muebles, no se cumple con la ley que determina los deberes de los tasadores y del Tesorero.   La ley exige que todos los bienes serán tasados para los fines de la contribución, según el valor corriente en plaza, y una tasación ficticia no encuentra apoyo en ninguno de los estatutos.   El dejar de imponer una contribución a las franquicias de las corporaciones como tales y en vez de esto aumentar el valor de los bienes muebles, o una contribución sobre los bienes muebles que no tienen un *situs* legal, no podrá considerarse como que se cumple con la ley.   Por tanto debemos contestar esta cuestión en la negativa.

Es importante en la consideración de este caso traer a nuestra mente la diferencia que existe entre bienes inmuebles y muebles y determinar a qué clase pertenecen los bienes sobre los cuales estas contribuciones fueron real y debidamente impuestas. Al hacer la clasificación hemos tenido la ayuda esencial del lenguaje empleado en la regla 290 del Código Político, que define separadamente lo que constituye bienes inmuebles y muebles. Aquí no se mencionan las hipotecas *eo nomine* en ninguna de las clases, pero se clasifican los créditos como bienes muebles que comprenden también "todos los demás objetos y cosas que puedan ser susceptibles de propiedad privada y que no estén comprendidos dentro del significado del término 'bienes inmuebles.'" Por tanto, los bienes a los cuales se les ha impuesto contribución en este caso deben ser clasificados como muebles y en verdad que así se les designa en la misma tasación hecha por el Tesorero. Además, el abogado del apelado durante el informe oral expresó que así habían sido considerados y tratados en la defensa que él hizo contra la reclamación de la demandante. Una hipoteca a veces se considera como un interés en la finca sobre la cual se constituye; pero para los fines de la contribución se considera general y propiamente sólo como garantía de la deuda y por tanto como un accesorio de la misma. El dinero en interés, deuda u obligación o como se dice en nuestros estatutos, el crédito, es la cosa principal sobre la cual se fija la contribución. La hipoteca no tiene existencia independiente del crédito garantizado por ella. Cuando la deuda se paga, la hipoteca muere. El crédito es abstracto y no tiene *situs* diferente de la de la residencia de su dueño. Pertenece y sigue la persona de su dueño, y siendo accesoria la hipoteca y estando adherida al crédito garantizado por ella, sigue la misma suerte. *People* v. *Eastman,* 25. Cal., 604; *Falkner, Bell & Co.* v. *Hunt,* 16 Cal., 171; *People* v. *Whartenby,* 38 Cal., 466. Por tanto, el verdadero *situs* de los bienes sobre los cuales se fija esta contribución, está en

Cincinnati, Estado de Ohio, fuera de la jurisdicción de nuestra legislatura para los fines de la contribución como créditos.

Al examinar las conclusiones de la corte sentenciadora debemos tomar en consideración la corrección de la actitud tomada por ese tribunal al declarar que la suma de $211,402 perteneciente a la demandante, invertida en hipotecas sobre fincas en esta Isla, representa el verdadero valor del capital empleado por la Compañía de Seguros en la transacción de sus negocios en Puerto Rico. Esta es la suma de dinero prestado sobre hipotecas constituídas en fincas de Puerto Rico, como aparece de los expedientes archivados en las diferentes oficinas de los registradores de la propiedad en los distintos distritos. Dicha suma representa correctamente fuera de duda el valor del capital perteneciente a la Compañía de Seguros en Puerto Rico, como aparece de los créditos hipotecarios. Pero ese capital apenas puede decirse que está empleado en la transacción de negocios en Puerto Rico. Representa él una inversión y nada más y el único negocio que la Compañía de Seguros realiza en relación con dicho capital es cobrar el interés cuando vence y de tiempo en tiempo cobrar los plazos del capital a su vencimiento. Una corporación bancaria que hace préstamos a plazos cortos y descuentos en documentos mercantiles y en negociaciones de cambio en esta Isla, puede considerarse que tiene su capital empleado en la transacción de negocios en esta Isla, de igual modo que puede decirse de una casa comercial o de cambios con residencia en esta Isla. Pero un individuo o corporación extranjera o del país que tiene una inversión en el capital o bonos del Dock Company o Sugar Growers' Association, no puede ser clasificado como tal. Tal inversión no puede considerarse como empleado en negocios, según la verdadera y corriente significación de esos términos. Por tanto, nos parece que ésta es una interpretación indebida que se da al estatuto, como lo ha hecho el Terosero de Puerto Rico al hacer esta tasación y no debe prevalecer.

Esto nos lleva a la consideración de otra conclusión legal a que llega la corte sentenciadora y a examinar si el capital de esta compañía de seguro hasta la suma expresada, puede o nó ser debidamente considerado como empleado en negocios en esta Isla y, como tal, sujeto al pago de contribución para el año fiscal de 1910–1911.

La demandante en este caso es una Compañía de Seguros con domicilio en el Estado de Ohio. El apelado no alega que durante el año fiscal de 1910–1911 la demandante estuviera haciendo negocios de ninguna clase de seguros en Puerto Rico. ¿Podría decirse que dicha compañía está haciendo negocios en esta Isla simplemente porque tiene hipotecas pendientes sobre fincas situadas aquí? Se ha resuelto por muchas cortes en los Estados, que una corporación dedicada solamente a arrendar sus terrenos e invertir sus fondos no se encuentra haciendo negocios de modo tal que quedara sujeto al pago de una contribución. Un caso en el que está envuelta esta resolución se presentó a la Corte Suprema de los Estados Unidos últimamente, según noticias adquiridas por los periódicos y se negó la revisión de la sentencia en el caso de Mine Hill Corporation Tax Case. No creemos que interpretado racionalmente el Estatuto de Puerto Rico en cuanto a la contribución, que este capital de la Compañía de Seguros pueda ser considerado como que está empleado en negocios en esta Isla, meramente por estar invertido en préstamos garantizados por hipotecas sobre fincas situadas en esta Isla. *People* v. *Harlan & Hollingsworth Co.*, 34 N. E. Rep., 758.

Y llegamos por último a la cuestión principal, o sea a la corrección de la sentencia dictada. ¿Cobró debidamente el Tesorero de Puerto Rico por concepto de contribuciones, recargos y costas debidas la suma de $3,631.73 de la Compañía de Seguros, cuya suma era debida a El Pueblo de Puerto Rico? La contribución se impuso, como ha sido admitido, sobre los bienes muebles. Las hipotecas *eo nomine* no están

incluídas en la propiedad a la que puede imponerse la contribución con arreglo a nuestros estatutos. Los créditos están exentos del pago de contribuciones de acuerdo con las disposiciones del Código Político. El *situs* de los préstamos garantizados por hipotecas constituídas sobre fincas rústicas en esta Isla, debe considerarse que se encuentra, a falta de una disposición especial del estatuto, en el domicilio de su dueño. La intención de la legislatura para imponer contribuciones a tales bienes como estas hipotecas si la tuvo en realidad, no aparece claramente de una consideración que se haga del mismo estatuto. Y existe una falta de jurisdicción legislativa para imponer contribuciones a bienes que tienen su *situs* legal fuera de los límites territoriales de esta Isla. De manera que, según las indicaciones que hemos hecho acerca de nuestro criterio en los puntos anteriores, debemos contestar esta pregunta en sentido negativo y declarar que la contribución pagada bajo protesta y cobrada por el Tesorero de Puerto Rico, debe ser devuelta junta con los recargos y costas, con intereses, de acuerdo con el estatuto. La sentencia de la corte de distrito en cuanto a este particular debe ser revocada y dictarse otra sentencia por esta corte a favor de la demandante por la suma reclamada por ella, incluyendo intereses, sin especial condena de costas.

*Revocada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf y Aldrey.

El Juez Asociado Sr. del Toro disintió.